IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

THE ESTATE OF JAMES EARL
TURNER, DECEASED                                                                    PLAINTIFF

v.                                        Case No. 1:19-cv-1030

VERNON E. MORRIS, Individually and
in his official capacity as Calhoun County Sheriff;
JARAD HENNEGAN, Individually and
in his official capacity as Calhoun County
Jail Administrator;
TOM TURNER, Individually and in his
official capacity as an Agent of the Calhoun
County Sheriff's Department;
GLENN JOHNSON, Individually and in his
official capacity as an agent of Calhoun County;                                    DEFENDANTS

## ORDER

Before the Court is a Motion for Summary Judgment filed by Defendants. (ECF No. 31). Plaintiff filed a response. (ECF No. 36). The Court finds the matter ripe for consideration.

### I. BACKGROUND

On May 15, 2018, James Earl Turner ("Turner") was arrested[1] at his home for failure to comply with a court order and taken to the Calhoun County Detention Center ("CCDC") to serve a thirty-day sentence. (ECF No. 32).[2] Turner's son, Brandon Turner, was present when Turner was arrested and stated that his father had been sick and vomiting that day, but he had not sought medical attention. (ECF No. 32). At 7:30 p.m., Turner was booked into the CCDC and told Defendant Glenn Johnson that he was intoxicated. (ECF No. 32). Defendant Johnson asked Turner if he needed medical attention. (ECF No. 31-3, p. 19). Turner declined. *Id*.

---

[1] Neither party has presented arguments as to the validity of this arrest.
[2] Plaintiff did not file a Separate Statement of Disputed Facts pursuant to Local Rule 56.1(b). Thus, the facts set forth by Defendants (ECF No. 32) shall be deemed admitted.

Defendants state that it is written policy and observed practice at the CCDC to check on all inmates and note the date and time on one-hour intervals during their incarceration. (ECF No. 32). This policy applied to Turner as he was observed on one-hour intervals during the forty-three hours he was detained at the CCDC.

On May 16, 2018, Defendant Johnson returned for his next shift at 3:00 p.m. (ECF No. 31-4, p. 12). At approximately 4:25 p.m., Defendant Johnson received a phone call from Brandon Turner who stated that Turner will suffer from alcohol withdrawals while being detained. (ECF No. 31-4, p. 13). After this call, Defendant Johnson went to Turner's cell and asked if he needed medical attention. (ECF No. 31-4, p. 14). Turner declined. *Id*.

On May 17, 2018, at approximately 10:00 a.m., Defendant Jarad Hennegan checked on Turner and noted that he appeared to be going through withdrawals. (ECF No. 31-3, p.23). Defendant Hennegan stated that Turner was sitting upright on the floor with a shower curtain around him. *Id*. Defendant Hennegan reported this to Calhoun County Sheriff Bob Dunn, and Sheriff Dunn instructed Defendant Hennegan to watch Turner. (ECF No. 31-3, p. 25). At approximately 1:00 p.m., Defendant Hennegan took a pitcher of water and four ibuprofens to Turner. (ECF No. 31-3, p. 27). Defendant Hennegan stated that Turner was nearly asleep but acknowledged him.

At approximately 2:45 p.m., Defendant Johnson returned to Turner's cell and found him unresponsive. (ECF No. 31-4, p. 21). Defendant Johnson called the EMTs and attempted CPR but stopped because he concluded that Turner had died. *Id*. The Arkansas State Police conducted an investigation regarding Turner's detention. Turner's body was sent to the Arkansas State Medical Examiner's Office, and the autopsy stated that the cause of death was chronic alcoholism with a contributing cause of hypertensive cardiovascular disease. (ECF No. 32).

On June 29, 2019, Plaintiff filed its first complaint seeking relief pursuant to 42 U.S.C. § 1983 and the Arkansas Civil Rights Act. (ECF No. 3). On October 17, 2019, Plaintiff filed an amended complaint. (ECF No. 13). Plaintiff alleges that Defendants acted with deliberate indifference with regards to Turner's medical needs, and this conduct violated Turner's Fourth and Fourteenth Amendment rights.[3] Plaintiff further alleges that Defendants' conduct violated the Arkansas Civil Rights Act.[4]

## II. LEGAL STANDARD

The standard for summary judgment is well established. When a party moves for summary judgment, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Krenik v. Cnty. of LeSueur*, 47 F.3d 953, 957 (8th Cir. 1995). This is a "threshold inquiry of . . . whether there is a need for trial—whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they reasonably may be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A fact is material only when its resolution affects the outcome of the case. *Id.* at 248. A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. *Id.* at 252.

---

[3] Defendants only address the Fourteenth Amendment in their Motion for Summary Judgment, and Plaintiff addresses the Fourth and Fourteenth Amendment in conjunction with one another, but only presents arguments for the Fourteenth Amendment. The Court interprets Plaintiff's argument and the absence of dispute as to the arrest of Turner to mean that Plaintiff is only claiming a violation of the Fourteenth Amendment. Thus, the Court will not address the Fourth Amendment.

[4] The Arkansas Civil Rights Act (ACRA) directs Arkansas courts to "look for guidance to state and federal decisions interpreting the Civil Rights Act of 1871, as amended and codified in 42 U.S.C. § 1983." Ark. Code Ann. § 16-123-105(c). We therefore analyze Plaintiff's federal and ACRA claims co-extensively using federal standards. *See Henderson v. Simmons Foods, Inc.*, 217 F.3d 612, 615 n.3 (8th Cir. 2000) ("Claims premised under the Arkansas Civil Rights Act of 1993 are analyzed in the same manner as [federal] claims." (citing Ark. Code Ann. § 16-123-103(c)); *see also Hess v. Ables*, 714 F.3d 1048, 1054 (8th Cir. 2013) (holding that "because [the appellant] did not explain why [her] ACRA claims warranted separate analysis, the district court did not err in dismissing the ACRA claims alongside the § 1983 claims" (citing *Lewis v. Jacks*, 486 F.3d 1025, 1030 (8th Cir. 2007)).

In deciding a motion for summary judgment, the Court must consider all the evidence and all reasonable inferences that arise from the evidence in a light most favorable to the nonmoving party. *Nitsche v. CEO of Osage Valley Elec. Co-Op*, 446 F.3d 841, 845 (8th Cir. 2006). The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *See Enter. Bank v. Magna Bank*, 92 F.3d 743, 747 (8th Cir. 1996). The nonmoving party must then demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik*, 47 F.3d at 957. However, a party opposing a properly supported summary judgment motion "may not rest upon mere allegations or denials . . . but must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256.

### III. DISCUSSION

Plaintiff brings claims against Defendants pursuant to 42 U.S.C. § 1983 and the Arkansas Civil Rights Act. Plaintiff brings these claims against Defendants Morris, Hennegan, Turner, and Johnson in their individual and official capacities.

**A. Individual Capacity**

Plaintiff claims that Defendants violated Turner's Fourteenth Amendment rights because they disregarded Turner's medical needs, and thus acted with deliberate indifference.[5] Defendants assert that they are entitled to summary judgment on this claim because they are entitled to qualified immunity.

---

[5] Plaintiff cites to the Eighth Amendment in its response brief (ECF No. 37) but does not assert an Eighth Amendment claim either in its initial or amended complaints. While parties are permitted to liberally assert new claims throughout their case, a claim cannot be introduced for the first time at the summary judgment stage. *Hildreth v. City of Des Moines*, 773 F.App'x 334, 335 (8th Cir. 2019) (citing *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004)). Since Plaintiff did not amend its complaint to add an Eighth Amendment claim, the Court will not address the Eighth Amendment in this Order.

Qualified immunity shields a government official from liability and the burdens of litigation unless the official's conduct violates a clearly established constitutional or statutory right of which a reasonable person would have known. *Truong v. Hassan*, 829 F.3d 627, 630 (8th Cir. 2016) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Evaluating whether a government official is entitled to qualified immunity requires a two-step inquiry: (1) whether the facts shown by the plaintiff make out a violation of a constitutional or statutory right; and (2) whether that right was clearly established at the time of the defendant's alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). Unless the answer to both of these questions is yes, the defendants are entitled to qualified immunity. *Ehlers v. City of Rapid City*, 846 F.3d 1002, 1008 (8th Cir. 2017) (quoting *Krout v. Goemmer*, 583 F.3d 557, 564 (8th Cir. 2009)). Qualified immunity is a legal question for the court, not the jury, to decide in the first instance based either on the allegations or, if material facts are in dispute, on the facts found by the jury. *Luckert v. Dodge County*, 684 F.3d 808, 817 (8th Cir.2012). *See also Littrell v. Franklin*, 388 F.3d 578, 584-85 (8th Cir.2004).

*Constitutional Violation*

Plaintiff alleges that Defendants acted with deliberate indifference when members of Turner's family called to notify the jail that Turner would be experiencing withdrawal due to alcoholism but did not provide Turner with medical care. Defendants argue that they are entitled to qualified immunity because there was no objectively serious medical need present and Turner declined medical care.

Prison officials violate the Due Process Clause of the Fourteenth Amendment when they show deliberate indifference to a pretrial detainee's objectively serious medical needs. *Ivey v. Audrain County, Missouri*, 968 F.3d 845, 848 (8th Circuit, 2020) (citing *Morris v. Cradduck*, 954 F.3d 1055, 1058 (8th Cir. 2020)). The deliberate indifference standard requires "both an objective

and subjective analysis." *Hall v. Ramsey County*, 801 F.3d 912, 920 (8th Cir. 2015). To succeed on this kind of claim, a plaintiff must demonstrate that a pretrial detainee had an objectively serious medical need that the defendants knew of and yet deliberately disregarded. *Id*.

First, the Court will evaluate whether an objectively serious medical need was present. "To be objectively serious, a medical need must have been 'diagnosed by a physician as requiring treatment' or must be 'so obvious that even a layperson would easily recognize the necessity for a doctor's attention.'" *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016) (quoting *Jackson v. Buckman*, 756 F.3d 1060, 1065 (8th Cir. 2014)). In determining whether an objectively serious medical need exists, the Court looks to the attendant circumstances, irrespective of what the officer believes the cause to be. *Id*. at 965. In the present case, Defendants state that the CCDC received three phone calls during Turner's detention. (ECF No. 32). These calls indicated that Turner was an alcoholic and that he would be having alcohol withdrawal symptoms during his detention. *Id*. In viewing the facts in the light most favorable to Plaintiff, it is reasonable to find that Turner was intoxicated and his need for medical care was easily recognizable. Thus, the Court finds that an objectively serious medical need was present.

Now the Court will evaluate whether the Defendants knew that Turner needed medical care but deliberately disregarded those needs. *Fourte v. Faulkner County, Ark.*, 746 F.3d 384, 897 (8th Cir. 2014). First, Defendant Johnson observed Turner during booking at the CCDC and stated that he appeared to be intoxicated. Defendant Johnson asked Turner if he needed medical care, and he declined. Second, Defendant Johnson spoke to Turner's son who informed Defendant Johnson that Turner would likely be experiencing withdrawal symptoms due to his alcoholism. After this conversation, Defendant Johnson asked Turner if he needed medical care and again, Turner declined. Third, Defendant Hannegan provided Turner with ibuprofen and water and reported to

Sheriff Dunn that Turner was on the floor wrapped in a shower curtain. Sheriff Dunn instructed Defendant Hannegan to observe Turner and if he did not improve, to send him to a doctor. In viewing the facts in the light most favorable to Plaintiff, Defendants offered medical care to Turner, but Turner declined each time. Thus, Defendants did not deliberately disregard Turner's need for medical care.

Accordingly, the Court does not find a constitutional violation present as Defendants did not show deliberate indifference to Turner's medical needs. Even if a constitution violation was present, Plaintiff's claim would still fail because the right was not clearly established at the time of the incident.

***Clearly Established Right***

In determining whether Plaintiff's constitutional right was clearly established at the time of Defendants' alleged misconduct, the Court looks to the objective legal reasonableness of the defendants' actions, assessed in light of the legal rules that were clearly established at the time they were taken. *Snider v. City of Cape Girardeau*, 752 F.3d 1149, 1155 (8th Cir. 2014) (citing *Anderson v. Creighton*, 483 U.S. 635, 639 (1987)). A constitutional or statutory right is clearly established if "[t]he contours of the right [were] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. at 640. In order to overcome qualified immunity, Plaintiff must prove that "in the light of pre-existing law the unlawfulness [of Defendants' conduct was] apparent. *Id*. A legal principle must have a sufficiently clear foundation in then-existing precedent. *Johnson v. City of Minneapolis*, 901 F.3d 963, 971 (8th Cir. 2018)(quoting *District of Columbia v. Wesby*, 138 S.Ct. 577, 589 (2018)). While the case need not be "directly on point, existing precedent must place the lawfulness of the particular arrest beyond debate." *Wesby*, 138 S.Ct. at 590.

In *Johnson v. City of Minneapolis*, the Eighth Circuit held that in order for a constitutional right to be clearly established for purposes of overcoming qualified immunity, case law must be established at the time of the alleged violation. *Johnson*, 901 F.3d at 971. The Court interprets this to mean that outside of an obvious constitutional violation, identifying a case where an officer acted under similar circumstances and was held to have violated a constitutional right is crucial.

Defendants cite to the Eighth Circuit's opinion in *Ivey*, which was filed on August 4, 2020. *Ivey v. Audrain County, Missouri*, 968 F.3d 845 (8th Cir. 2020). While *Ivey* is factually similar to the present matter, it cannot be used as controlling authority as it was not established at the time of the present alleged violation that occurred in May 2018. However, the Court does find *Ivey* to be instructive.

Defendants argue that since the officers in *Ivey* were granted qualified immunity, then Defendants are entitled to qualified immunity here. *Id.* In the *Ivey* case, Mark Ivey was arrested then transported to an emergency room where he was diagnosed with asthma and drug intoxication. *Id*. Ivey was released from the hospital and booked into the jail later that night. *Id*. During his detention, Ivey vomited in his cell and had "seizure-like symptoms" but declined medical attention when asked by prison staff. *Id*. at 847. The Eighth Circuit held that because Plaintiff could not offer controlling authority governing the situation or show an "obvious" constitutional violation, the officers were entitled to qualified immunity. *Id*. at 850.

The Court agrees with the Eighth Circuit in *Ivey* because there is no controlling authority or robust consensus of cases of persuasive authority governing the situation the officers faced here, and Plaintiff has not demonstrated an "obvious" constitutional violation. *Id*. Turner was offered medical attention by Defendants and declined said medical attention several times. Plaintiff has not provided, and the Court is not aware of controlling or persuasive authority that governs what

8

prison staff must do when a detainee may need medical attention but repeatedly declines. Thus, even if the Court found a constitutional violation, the Court cannot find that the right was clearly established at the time the alleged violation occurred.

Therefore, Defendants are entitled to qualified immunity on this claim and its associated state claims. Accordingly, Defendants are entitled to summary judgment regarding Plaintiff's Fourteenth Amendment claim brought against them in their individual capacities.

### B. Official Capacity

Plaintiff also brings a claim against Defendants in their official capacities and contends that the Calhoun County Sheriff's Department failed to train its officers. Official capacity claims are "functionally equivalent to suit[s] against the employing governmental entity." *Veatch v. Bartels Lutheran Home,* 627 F.3d 1254, 1257 (8th Cir. 2010). Plaintiff brings this claim against all Defendants who were employed by the Calhoun County Sheriff's Department at the time of the alleged incident. Thus, Plaintiff's official capacity claim is against Calhoun County.

When a plaintiff can point to a municipal policy that either "violates federal law, or directs an employee to do so," "no evidence is needed other than a statement of the municipal policy and its exercise" to establish a constitutional violation. *Brewington v. Keener*, 902 F.3d 796, 801 (8th Cir. 2018) (*citing Szabla v. City of Brooklyn Park Minn*., 486 F.3d 385, 389-90 (8th Cir. 2007)). However, when a plaintiff alleges an unwritten or unofficial policy, there must be "evidence of . . . a practice, so permanent and well-settled so as to constitute a custom, that existed." *Id*. (*citing Davison v. City of Minneapolis*, 490 F.3d 648, 659 (8th Cir. 2007)). To establish a claim for "custom" liability, Plaintiff must demonstrate: (1) the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees; (2) deliberate indifference to or tacit authorization of such conduct by the governmental entity's

9

policymaking officials after notice to the officials of that misconduct; and (3) that plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation. *Snider v. City of Cape Girardeau*, 752 F.3d 1149, 1160 (8th Cir.2014) (*citing Johnson v. Douglas Cnty. Med. Dep't*, 725 F.3s 825, 828 (8th Cir.2013)).

Plaintiff alleges that Calhoun County should be held liable for inadequate supervision and training of Defendants. Defendants state that there is a written policy to check on all inmates and note the date and time on one-hour intervals during their incarceration. (ECF No. 32). In its response, Plaintiff does not refute this policy or argue that it violates federal law or is unconstitutional. Additionally, Plaintiff does not point to an unwritten or unofficial policy adopted by Calhoun County.

Accordingly, Defendants are entitled to summary judgment in regard to this official capacity claim and its associated state claims.

### 3. State Law Claims

Because the Court has found that Defendants are entitled to summary judgment on Plaintiff's federal claims, the Court declines to exercise supplemental jurisdiction on any remaining state law claims.

## IV. CONCLUSION

For reasons stated above, Defendants' Motion for Summary Judgment (ECF No. 31) is **GRANTED**, and Plaintiff's claims are hereby **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED**, this 28th day of May, 2021.

/s/ Susan O. Hickey
Susan O. Hickey
Chief United States District Judge